Good morning, Your Honors. Len Garfinkel for the California Department of Education. I'd like to make a couple of key points about the age 18 to 22 period, and then a couple of key points about the status of the responsible adult. First of all, the right of any parent, whether a natural parent or appointed in some way, to represent the special education interest of the child ends at age 18. That's Education Code 56041.5. California made a legislative choice, notwithstanding that, in 56041, that it would continue to assign responsibility for the child's education to the district where the parent lived, the parent who was representing the child the day before the child turned 18. And we notice also in 56041 that the legislature said, notwithstanding any other provision of law, was this the case. Also, what they said was except for those pupils meeting residence requirements for school attendance specified in Subdivision A of Section 48204. Correct, Your Honor. There are two exceptions, 48204A and also 56041.5B for an incompetent student, either of which applied in this case. What we know there is that the legislature knew how to make exceptions and state them when they wanted there to be exceptions. The legislature doesn't distinguish in any way between different categories of parents in 56041, which is consistent with 56028, where there is no hierarchy of rights of different types of parents. Every parent, whether natural or appointed under 56028, has the same exact rights to represent the child in special education matters. That continues in 56041. And in the Orange County case, this Court said that the purpose of 56041 was continuity. It was to maintain continuity in the responsibility for the child's education at 18. And the Court also said that 56041 incorporates the definition of parent in 56028. And it also said in 56020, which says that the definitions apply unless the context requires otherwise. The plain reading, then, in 56041 is that we're talking about the same person, the day after the child turns 18, the day before the child turns 18. I'm a little surprised by argument. If I have in there, except for those pupils meeting the residence requirements for school attendance specified by 48204A, wouldn't I go to 48204A and determine the residency requirements? In 48204A, Your Honor, what you have is certain exceptions to the general rule in the for those pupils meeting residency requirements for school attendance specified in 48204A and notwithstanding any other provisions. So I went to 48204A. If I go to 48204A, is there anything in 48204A which would suggest that this pupil was residing in Orange County? There's nothing in 48204A that applies with this student. Okay. So you're saying, then, that there's nothing in 48204A which suggests that simply because the juvenile hall might have been a residence that Orange County would then have the problem? Well, there's nothing. Answer my question. 48204A, you're saying there's nothing there which would suggest that the fact that the juvenile had been or that the pupil had been at juvenile hall would mean that the residence would be at the juvenile hall. Your Honor, this is not the section that addresses juvenile hall. That's 56150. A different section that does say that when the child's in juvenile hall, the county office of education has the responsibility. That's which one? I believe it's 56150, Your Honor. Now, this child was placed in a... I'm just trying to make sure because it seems to me that the first issue that I have has to relate to 56028, right? That's for what happens before he's 18. Correct. And so you're talking about everything that happened after he's 18, and I'm trying to find the exact code section which would suggest then that if I find 56028 does not establish a responsible adult as a parent, then how am I to change what I find for 56028 at all? I think... I mean, 56028 is the one where you've got to go to to suggest that the responsible adult is a parent, correct, in order to have the responsible adult pay before the time he's 18, correct? Correct. So when he turns 18, which is your first issue you've come out of the box with, what is there which would suggest that that determination changes? I mean, 56028 controls what happens before he's 18. Yes. What code section says it changes after he's 18? Well, 56041.5. Well, 56041.5, is it A5 you're responding to? Is that the one you're looking at? Well, 56041.5 says that once the child's 18, that... See, before 18, the child is represented in educational matters by a parent, and the law says we will track responsibility for district based on where that person representing the child is. After 18, in 56041.5, that person has no more legal rights to represent that child. The child now has those rights, but the legislature in 56041 says we're not going to track the residence of that child. We're going to make a legislative choice that we're going to continue to track the residence of whoever was the parent under 56028 the day before the child turned 18. That's the key moment in time, and we continue... All you're really arguing, then, is that 56041.5 says once I've made my determination as to 56028, I don't have to make any more determinations. Is that what you're suggesting? Correct. Okay. I just wanted to understand the emphasis of your argument, because then I'm back to the old adage, I've got to determine what has to happen in 56028, correct? Yes. And I'm going to get to that next with responsible adult. But just to finish up the point, Your Honor, that, by the way, in H. 1822, even if there is no parent, I think this is important to note, 56041 is still capable of identifying the responsible school district. In that respect, this case is very different from the Orange County case, the portion of which said that for a brief window of time, the laws applied to the facts could not identify a responsible district. And where do you find that provision in 56041? Is that .5, which says how they can find the applicable county? You just said there's a place in 56041 which would tell me, after the 22, what the appropriate county was, even if they didn't have a parent. Isn't that what you just said? Yes. It would be the argument we just made, which is that, for example, Your Honor, let's say a student is represented by a natural parent all the way through until 18. On the 18th birthday, that parent passes away. The child has no parent of any kind, parent or appointed. There doesn't need to be an appointed parent because there's you don't appoint parents from 18 to 22. The child doesn't need to have a parent from 18 to 22 who represents himself. And so in that case, where that child then had no parent on the 18th birthday, the parent passed away, you would apply the law and say the responsible district is whoever was the responsible district the day before. The one in effect at the day, yeah, at the time. That's what the language says. Yes. The last district of residence in effect. Correct. And by the way, the district court, although it cited the fact that the responsible adult, their rights were terminated by the juvenile court at 18, that doesn't distinguish the responsible adult in any way from any other kind of parent because their rights go away at 18, too. And so the judge, the district court, in basing its decision between 18 to 22 responsibility, reached its decision because it found CDE responsible the day before 18. Therefore, it did a very strict application of 56041 and said, therefore, CDE is responsible after 18. Switching to the status of the responsible adult, in the Orange County case, the court was looking at the purpose and history of the law that came into effect on October 10, 2007, and found that what was happening there was that the legislature was conforming California's law on parent or guardian in 56028A3 to the Federal definition. And, therefore, there were two prongs. The first part is a parent or guardian authorized for all purposes to represent the child. The second prong, though, is a parent or guardian who is simply making educational decisions for the child. May I interrupt you for just a second? Here we're in California. The language of the statute is parent or guardian. Gene Sciotta was a responsible adult, right? That's right. I remember when I was in practice in San Francisco, we used to have guardianship proceedings. Guardians had to qualify. There was a basis of hierarchy as to who could be a guardian. And, besides that, guardians would give bond if there was an estate, small bond if there was no estate. Is a responsible adult a guardian? Yes, Your Honor. That's what the court said in Orange County. It's not what the court said. The court said that, as I understand, we didn't have a responsible adult in Orange County at all. I'm sorry, Your Honor. You're correct. And can I correct myself? We had a de facto parent. Correct. What I mean to say there, Your Honor, is in that case, the court said that even though de facto parent was not listed in the definition, de facto parent qualified as a guardian for the reason that the de facto parent was appointed to represent the educational interests of the child. If I ---- The de facto parent does not. Can I just ask one question? Go ahead. Thank you. The de facto parent, how is that different from the guardian? Differ from the guardian? Well, I guess as Judge Bea describes guardian, you put a bond and there's, you know, procedures. Hierarchy. Well, the de facto parent, Your Honor, in that case, there was some discussion about them having some greater authority acting as a parent in a greater sense than simply making educational decisions. But the basis for the court's decision was the fact that it met the second prong, that it was capable of making educational decisions for the child, not that it met the first prong, which was authorized to act as a parent for all purposes. So what you're saying is that Orange County, a Federal case interpreting Federal statutes, determined that a responsible adult under State law turns out to be a guardian authorized to make educational decisions for the child. Your Honor, what the court said ---- And we're bound by that. What the court said was that the State's intent in passing that was to conform to the Federal law. That's what the State was seeking to do. And, therefore, in doing so, it was adopting a functional definition of guardian where the more important thing was what is this person authorized to do as opposed to their child. Regardless of the vehicle of statutory interpretation in which the Orange County court indulged, right, we're bound by the Orange County's determination that a responsible adult is a guardian under this Act. True? So help me with this. Answer Judge Bates' question. You're nodding your head. I don't know if you were going to say yes, true, or no, false. A responsible adult does qualify as a guardian under this Act because it's authorized to make educational decisions. So in Orange County, in the procedural history, as I understand it, that panel sought certification by the California Supreme Court to say this is a question of California law. You're fighting among entities within California. You should decide. The California Supreme Court should decide. And the California Supreme Court just said no. Correct. You decide it. So then the next thing that happened, I was on a panel. Garcia. Garcia, right, where we're having the same debate. Who pays? Is it the, this is the one who was in jail. Adult County Jail. Adult County Jail. And he turned over 18. And so he, we sent that up and asked the Supreme Court to take it on. And they said yes. And that was deciding whether your department would pay or was it Orange, maybe Orange County. Los Angeles Unified. Los Angeles Unified would pay. And so my question is on this case, this is, again, you know, a unique fight among California entities. Is this something that we should consider sending to the Supreme Court, I mean, the California Supreme Court, or is it more like the Orange County case where they're just going to say no and, or is it your view, I'm going to ask you this too, does Orange County so control so much, so many aspects of this case, the reasoning of it, that we should just follow Orange County and then if the Supreme Court wants to decide differently at some point, they can do that? I would lean towards the latter, Your Honor. For this reason, I understand that the court's role is to either predict what the California Supreme Court would do or to certify it there. I think there's a similarity and a difference between this case and Garcia. The similarity would be, in both cases, our position would be that if there's not an exception set forth in 56041, the law is clear and can simply be applied to identify the responsible district. The difference would be in Garcia, of course, the question is whether 56041 applies at all to a set of students who happen to be in jail as opposed to a particular kind of parent. Okay. Now, there is one other question that I, I mean, my worry is that we do have Orange County, but they were dealing with a de facto parent. Yes. And a de facto parent is really determined under the California Rules of Court, Rule 5.502. I have a responsible adult here, which is not a de facto parent. It's a responsible adult. It seems to me that that comes out of Sections 361 and 726. Yes. And if I read 361 and 726, I don't know how I could say responsible adult is a guardian, because if you read 361 and 726, the statute provides that the court appoint a responsible adult if the court specifically limits the right of the parent or the guardian to make the educational development services decisions for the child up to the, up until the child reaches the age of 18. So if, in fact, the statute itself is distinguishing between responsible adult and parent or guardian in the very statute that I'm finding responsible adult, how in the devil am I ever to decide that it's automatic that 56028 makes a responsible adult and a guardian? I don't think there's any, actually, difficulty in doing so. Why isn't there? It's a matter of construction of statutes. It's a statute. The statute provides alternatives for the responsible adult. One is the parent. One is the guardian. One is somebody else. Now I have a statute, which is 56028, which doesn't talk about responsible adult at all until 2009. And then in 2009, they amended to include responsible adult in the definition. So before that, it wasn't there. And then if I look at 361 and 726, it contrasts responsible adult to parent or guardian, which 56028 is asking me to make the question. So how can I make that determination? I would encourage you to do so in a couple of ways, Your Honor. First, I would look at California rules of court. First of all, 5.50213 says that when the court appoints a responsible adult to represent the special educational interest of the child, that person acts as a parent or guardian. That is the same as, by the way, the California rule of court, which was quoted by the administrative law judge. It's at page 32 of our excerpts of record, paragraph 40. And that's California rule of court 5.650F3, which says the same exact thing, that when the court appoints a responsible guardian to represent the special educational interest of the child, that person acts as a parent or guardian. That became applicable, by the way, January 1, 2008. It was based on the Judicial Council's action of October 26, 2007, 16 days after 56028A3 and its new version became applicable. The district court, by the way, in its opinion, this is at page 154 of the excerpts of record, quoted with favor that portion of the ALJ's opinion. It said we agree with the reasoning in paragraphs 36 to 41, which includes paragraph 40. The other piece is that focusing again on the act of October 10, 2007 and the legislative purpose being found by the Orange County Court to conform to the Federal law, which says we're adopting an expansive definition of guardian, we are not relying on the title of the person, we're relying on the authority granted to the person, and therefore, when that person is appointed to represent the educational interest of the child, they are a parent or guardian. And so in as to your concern about 361 and 726, these are statutes of general application which apply to any child, whether in general education or special education. Those California rules of court, by the way, are also of general application. They say if someone's appointed under these sections, they become acting as a parent or guardian, whether the child's in special education or general education. And so there can be a parent or guardian who has their rights taken away for whatever reason by the court. The person who is appointed as the responsible adult is the responsible adult, and also under 56028a3, they act, and rules of court, they act as the parental guardian in qualifying with that definition. I know I'm over time, so may I? If you need it, I'll give you a minute for rebuttal. Could you say the first part again? I heard the rebuttal. You are over your time, but if you need it, you can have a minute for rebuttal. Thank you. Good morning, Your Honors. May it please the Court. Karen Van Dyck on behalf of the Orange County Department of Education. I'm going to go ahead and try and respect my colleague's time to argue. So how have you divided your time? Stop her clock so she can tell me procedurally how we're proceeding. Well, my attempt was to go about two or three minutes and try to allow Irvine Unified a little bit more time to flush out their arguments, so I'm simply going to address the reimbursement piece. Okay. Okay. Thank you, Your Honor. Your Honors, I think what we're dealing with here, at least as to OCD, is one thing. No one's arguing the Orange County Department of Education is responsible here. What the county is asking for now is simply that it be reimbursed the funds that it paid for this young man's education. And I think that there's a dual request. First, as made clear by the papers, the county doesn't believe that Irvine's responsible for this education. We believe it's the county, for the various reasons cited in its pleadings. However, I think there's also another thing that we have to look at here. There's a lot of statute-cited cases, OSEP letters, that go to what the state's responsibilities are under the IDEA, specifically 20 U.S.C. 1413A.13, 1412A.11a, Gadsby v. Grasnick, the Correll case, the Tammany Parish case. I'll go on, but what I'm going to do is summarize it for this Court. What the IDEA did was say the states are responsible to ensure that every child within the state is provided a FAPE. And part of that is the ability to delegate its authority and obligation, financial and programmatic, to the LEAs within the state. And part of that obligation is creating a system that we can all understand, so when we try to implement it, we know who's responsible. That didn't happen here. I contend that even if this Court adopts AS, we can't escape the conclusion that prior to 1109, no one knew how to implement that system. Even if we got there in AS, no one understood. We started with CDE making arguments that are contrary to AS and how it ultimately rolled. If you look at the AS decision itself, it relied on a provision that no party cited in any of its briefings. I can say that because I was representing the Orange County Department of Ed in that case. I can say that there's at least three different iterations at the OAH level as to how to implement these statutes, which was then changed by the Central District Court of California. So regardless of how this Court comes down on this issue, I think that the county stepped in the shoes of the state when it chose to fund this young man's placement. We had a minor child who was in juvenile hall in need of a placement. No one would step up to the plate. Under the statute cited, under the cases cited, and under those letters cited, it was CDE's responsibility to come in and make that placement, fund that placement, and if later on down the line it wasn't them at the end of the day, they should have come back and obtained reimbursement from the LEA. They're the holder of the proceeds. It would be a little helpful to me if you didn't use initials for everything. I'm trying to keep them all straight. Okay. Let's go to the county. I second Judge Wardlaw. Okay. So the bottom line is this. The state has the obligation to step in and fund this case. They didn't do it. The county came in and it did. And I don't think there's any dispute that right now the county was not the agency responsible. Now, KG was fortunate. You're saying it's either Irvine School District or it's the state has the responsibility. Yes, Your Honor. So you're saying one of them owes you money. Well, I'm contending primarily the state owes me money, and here's why. Because even if you were to find Irvine responsible at the end of the day, the state of that statutory scheme at the time was such that no one could interpret it, not CDE itself, not OAH, not the central district, not any of the parties. And this was before 2009. That's what you're really saying. Correct, Your Honor. And so now we have the benefit of this amendment. We look hindsight. Oh, wow, the lightbulb apparently comes on. But Irvine could not have known it was responsible. That lightbulb wasn't on yet. And at the time, we were getting guidance from OAH and from CDE itself that it clearly wasn't Irvine Unified. You're making an estoppel argument? Well, yes, and an equitable argument. And actually, the state had the obligation to step in under the statutes that we've cited. They didn't do that. And so I would contend that the county should be reimbursed that money. And if at the end of the day this court decides it's another party, then the state can go after that party for whatever monies are owed as they hold the purse rings. And I'm going to go ahead and defer at this point to my colleagues so they have sufficient time. All right. Thank you, counsel. Thank you, Your Honor. I'm Patricia Kramer. I represent KG, and I thank you for the opportunity to present his position in this manner. As I see this, we're looking at two separate issues that distinguish this case from the AS or OCDE case. The first one is a de facto parent versus a responsible adult. The only things that I can add to what's already been said, and I'm sure Mr. Hartbottom will expand on that further, is that if you're looking to call a responsible adult a guardian, I fall back to the statutory order, the statutory law that says in 361 and 726 that there are no appropriate educational decisions. The court then at that time can take only the educational rights away. With a de facto parent, it's a different hearing. With a guardian, it's a different hearing and it's a different standard. Ms. Kramer. Yes, sir. Help me, please. This is a three-judge panel of the Ninth Circuit. We have rules that say that we must follow decisional law of the Ninth Circuit. Yes. Beyond that, we have rules that say if it's a well-reasoned dicta, not a holding, we must follow it. Yes. Now, with that in mind, I turn to AS versus Orange County. Okay. And I turn to, I don't have exactly the page number here, but it's 6 of 12 on the Westlaw. And it says, here Hardy was appointed by the juvenile court to have legal authority for making educational decisions on AS's behalf. That's exactly the same situation as Sheila, pardon me, Jean Sciotta was. She was appointed by the juvenile court to have decision on educational determinations. Then the next statement is, that made her a guardian as that term is commonly understood. Hardy, thus, was a parent for purposes of section 48-2000 on January 1st, 2009. Why, if that is so, are we not bound to find that Jean Sciotta was a guardian or parent following Orange County versus AS? It's as simple as that. It is, Your Honor, except, again, I think the standard that the district, that the juvenile court uses when they make a de facto finding and a guardian finding is different. And I don't know that that was made clear in the AS case, so I just want to raise that. But in AS they said that if Hardy was appointed by the juvenile court to have legal authority for making educational decisions, that's exactly what Jean Sciotta was appointed by the juvenile court to do, to make educational decisions as far as this child was concerned. That is correct, Your Honor. But as the de facto parent, she also had obligations and responsibilities for the care and control of the child. She may have been the guardian. She may have had responsibilities over the body of the person, maybe even of the estate of the person. But all we're really involved with here is a person who has educational determination authority. And it seems to me that we are bound by the language of AS versus Orange County to find that Sciotta was a guardian and, therefore, that the obligation was that of the location of the guardian residence. Why am I wrong about that? I understand your point, sir. I don't necessarily agree, but it is what we're talking about. I might not agree either, but under our rule of decisional law, are we not bound by that? I understand that. My concern in taking that into 56041 is the change that added responsible adult, as you know, into 56028 did not occur or take effect until 1109. In this particular incident, KG was in Juvenile Hall and was sent to a residential placement in October around, I forget the date, somewhere around the 17th to the end of October, came back because of a medical issue and went back out the last couple of days of December of 2007. He turned 18 on 11408. At that time, yes, by operation of law, the RA's responsibility terminated. While we don't have anything in the law that says who was responsible for him during those 24, 23, 24 days, he was in residential placement. At that time, we had something called an interagency dispute resolution. But to accept that argument, you have to interpret 2009 as an expansion. The act is amended in 2009 as an expansion and not simply a clarification of existing law. But don't you believe that it was merely a clarification, and why not? I'm sorry, Your Honor. Even with my hearing aids, your voice is suddenly like bacteria. Oh, I'm sorry. I know. I know. I'm quiet. I don't have the booming voice of my colleagues. I'm sorry. I'm just saying you have to, to accept that argument, you have to read the amendment in 2009 as an expansion, not a mere clarification of the 2007. That's correct. And what's your basis for reading it that way? Well, I think that legislative history was very clear that it intended to broaden the statute. And I think the unfortunate thing that has happened with the foster children and getting them placed and adding them and responsible adults is when the law was changed, no one bothered to look and say, okay, now we have responsible adults. What does that mean to all of the other codes that could be impacted by it? And so since there has not been, and there's my original case back in 2006, which Justice Escardo said that, you know, he did an exhaustive search and there's no statutory authority to tell us where to look to who is responsible. And then you had the OCDE case in also 2009 that came out with the same thing. So we've been scrambling to try to figure out who is responsible. If OCDE is responsible because they're sitting in juvenile hall, the rulings for OAH now say they can then go to now the interagency dispute and go against a district to find out if that district is going to pick up. They can do memorandums of understanding. But we still don't know. And my concern is this. I had a kid who turned 18, and for 11 1⁄2 months he held his own rights. Then as of January 1, 2009, the responsible adults district is supposed to go back 11 1⁄2 months later and find out that they're responsible for this child, which they only had prior to his 18th birthday 23-24 days in residential placement. It seems to me that we would have been better served, and these children better served, had CDE bothered to legislatively resolve all the issues with the ED codes. That's the problem. I mean, like Judge Bea. I'm sorry? Like Judge Bea, when I read Orange County, its language, its definition of guardian is so broad that the language in the 2007. Could cover anybody. Would cover anybody in charge of educational needs. And that's the situation we have here. So I know you're arguing, you know, individual justice with respect to, or what is right with respect to KG. But we have to now interpret the whole thing broadly and consistently with our own precedent. And the California Supreme Court had an opportunity to do this and said no. That's correct. So now they're kind of stuck with what we said in Orange County. Correct. Except we have, excuse me. Go ahead. In 56041, when does it take effect? Because we don't have a ruling, even with the decision in AS as I read it, as to when it would have shifted from OCDE to Irvine. Or if it did. Is there any? And, frankly, I ask your opponent these questions based on the statutory interpretation that one could have come up with. But based on the language that Judge Bay has adequately presented to you, what is going to be my distinguishing characteristic to try to undo what is pretty broad language? I mean, that's my worry. I can come up with all these good justifications. But the bottom line is I've got precedent. And so what is my distinguishing characteristic from that precedent, besides de facto versus responsible adult, if that is even distinguishing given what the language was? Correct. It's a very close call, as it was in AS, and I think that these are so confounded, and we're trying to mesh different federal law with the state law for education rights, and then we take the juvenile law and we try to push them all together, and this is what we've come up with is this mess. The distinguishing thing to me is, again, he leaves Orange County Department of Ed and is in residential placement. Was he 14? I think 17 days prior to his 18th birthday. Is that sufficient to switch it from OCDE to IUSD? And if so, where's the statutory authority on that? There is none. And if not, shouldn't the CDE be responsible for failing to identify when that should switch from an accounting office of Ed? Who wondered the funding model does not receive money from the state to place a child in residential placement? When does that occur? All right. Thank you. Are you leaving some time? She left you 22 seconds. You're over. You don't have any time at all, actually. Yeah, I'll give you a couple minutes. Okay. My name is Dan Harbottle. May it please the Court, I represent Irvine Unified, and I do think that the prior presenters have largely covered the ground, but I think that there is, and they've been brought up, there are ways to distinguish this case from AS, primarily because there is no equivalent distinguishing factor in the Welfare and Institutions Code, for example, as Your Honor raised between a de facto parent and a guardian. It's legitimate and reasonable to conclude, based on the record in AS, Orange de facto parent constitutes a guardian. It is not reasonable to conclude the same with respect to responsible adult for primarily two reasons, both of which have come up. Number one, the Welfare and Institutions Code makes a statutory explicit distinction between guardian parents on one side, responsible adult on the other. If that had been the case in AS, we don't know what the answer would have been. That was not the case. Those were not the facts, and that was not the statutory scheme in AS. That's a different, that's one distinguishing factor. The second one is that in this case, as has already been raised, responsible adult was explicitly included. And I know that there's questions, and it is a close call, whether there was an expansion or a clarification of the statute. But taken together globally. Ginsburg. Is the language including, which would tend to mean that it was a clarification? The legislative digest, the one that's supposed to be controlling, says the language of the new statute in 09 would broaden. That's the explicit language. Would broaden the purposes for which the term parent is used. It does not say clarify. And broaden is essentially the same as expansion in the way I've looked at this. Why do you say the legislative digest is determinative of statutory interpretation? I think that's the legislative counsel's determination. There's case law cited in various of the briefs that establish. Is there a case that says that in making a statutory interpretation, we look not at the statute's text, but at what the legislative. Pardon me. Do you want to interrupt? Sorry. Is there some case that tells us that in looking at the statute's, how to interpret the statute, we look not at its text, but at the legislative digest or legislative counsel? If the language is ambiguous. Is there a case that says that? There's many cases that say if the language is ambiguous, we should look to the legislative history. Is that California, the Supreme Court case, and that's what we should follow? Yes. And do you have one in mind? I would have to look into that. You're just talking about general canons of statutory construction. Correct. We would have to first find that the statute is ambiguous before we would be free to look. I think that's right. I think that's right. And the reason I think it's ambiguous is an ex post facto analysis. It did not exist in the statute before the 09 Amendment. The fact that it was included in the 09 Amendment means at least it was a clarification that needed to be made. So it was at a minimum ambiguous to the extent that it needed clarification. And the fact that it was added, in addition to the fact that there's a preexisting statutory scheme that distinguishes guardian from responsible adult, is critical. I also want to point out one thing that hasn't come up in my last remaining seconds, and that is that in Welfare and Institutions Code section 362A, there's an explicit, this is directly after the one cited by His Honor earlier, that specifically says the court has no authority to order services for a student like this unless it has been determined through the administrative process of an agency that has been joined as a party at that time that the child is eligible for those services. As Ms. Cromer pointed out, KG turned 18 January 14, 2008. No one, including CDE nor the student, puts district on notice that there might even be a potential statutory reading that would implicate Irvine until April of 2009, after the amendment had occurred. Empirically, that means to me that even the California Department of Ed, which has made the similar, the same argument we're now making, understood that responsible adult was not a guardian under the existing, the then existing pre-09 statutory scheme, and therefore they were not parents, and this student was parentless. And because of the way AS came down, the state was the responsible agency. Thank you. All right. Thank you, counsel. Thank you. Quickly, Your Honors. First, in response to Judge Bea, it's at page 1062 of the Orange County case, and it's page 10 of the Westlaw version that says, Behold, that Hardy was a parent for purposes of the 2007 version as well. And then in response to Judge Wardline and Judge Smith's questions about the effect of the 2009 version, the legislative history includes the words includes, which when responsible adult was specifically added, the legislative history includes the word includes, which tends to mean what follows as an example. It also uses the terms clarify. And when interpreting the relationship of 560, 28, and 4200, a separate issue in the Orange County case, the court found those terms, including clarify, more persuasive than the term broaden. In summary, we urge reversal of the district court's decision. Thank you. All right. Thank you very much. Thank you all for your eloquent arguments on this case. Irvine School District v. California Department of Education is submitted.
judges: Wardlaw, Bea, Smith